IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIDEOLABS, INC. and<br>VL COLLECTIVE IP LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>META PLATFORMS, INC., WHATSAPP<br>LLC, FACEBOOK TECHNOLOGIES, LLC,<br><br>    Defendants. | CIVIL ACTION<br>NO. 22-680 (JHS) |

## ORDER

**AND NOW** this 19th day of March 2025, upon consideration of Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. Nos. 55, 56), Plaintiffs' Response in Opposition to Defendants' Partial Motion to Dismiss the First Amended Complaint (Doc. No. 63), and Defendants' Reply (Doc. No. 64), it is **ORDERED** that the Partial Motion (Doc. Nos. 55, 56) is **GRANTED**.[1]  Defendants shall file an Answer to the First Amended Complaint (Doc. No. 63) by April 2, 2025.

---

[1] **Introduction**

Plaintiffs VideoLabs, Inc. and VL Collective IP LLC (collectively, "VideoLabs" or "Plaintiffs") license patents they own involving technologies that facilitate digital video from its creation to the manner in which it is processed, delivered, displayed, and targeted. (Doc. No. 45, First Amended Complaint ("FAC") at ¶ 2.)  Due to the numerous efforts that went into developing foundational technology in this sphere, VideoLabs' founders believe that no single company can provide a high-quality video experience without using other companies' technology. (Id. at ¶ 4.) To streamline the acquisition and use process, VideoLabs amassed key patents in video technology from companies such as Hewlett Packard Enterprise, Siemens AG, and Panasonic, and created a platform to allow other companies to license those patents from them for a fee. (Id. at ¶¶ 6, 12.)

Defendants Meta Platforms, Inc., Instagram, Inc., WhatsApp LLC, and Facebook Technologies, LLC (collectively, the "Meta Companies" or "Defendants") operate social media platforms that

use video technologies.  (Id. at ¶ 8.)  Defendants did not license any patents from Plaintiffs.  (Id. ¶ 9.)  On June 6, 2024, Plaintiffs filed the FAC, alleging that Defendants infringed on five of their patents in violation of 35 U.S.C. § 271(a), which provides:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a).

Before the Court is Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. Nos. 55, 56), seeking the dismissal of Count IV, alleging infringement of U.S. Patent No. 7,266,682 (the "'682 Patent"), which deals with the transmission of data securely.  In the FAC, Plaintiffs seek to revive the '682 Patent, which this Court found invalid in a prior Opinion and Order, by submitting six new paragraphs containing an expert's opinions on the purported inventiveness '682 Patent.  Because the portions added to FAC do not overcome this Court's ruling in the Opinion and Order dated April 22, 2024 (Doc. Nos. 35, 36) that the '682 Patent is invalid because it concerns ineligible subject matter under 35 U.S.C. § 101 and is not inventive, the Partial Motion (Doc. Nos. 55, 56) will be granted and Count IV will be dismissed.  35 U.S.C. § 101 provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.

**U.S. Patent No. 7,266,682 (the '682 Patent, Count IV)**

Plaintiffs own all rights and title to the '682 Patent, titled "Method and System for Transmitting Data from a Transmitter and Receiver Therefore," which was issued by the United States Patent and Trademark Office on September 4, 2007.  (FAC at ¶ 60.)  The '682 Patent addresses the problem of securely transmitting real-time data, such as video and audio, over the internet.  (Id. at ¶¶ 62–64.)  The '682 Patent can prevent security flaws by ensuring, at the receiver, that data being transmitted is not insecure or unwanted.  Specifically, the transmitter is used to insert authentication data into the data packets before the data is transmitted.  The authentication data is then transmitted together with the data packet and analyzed by the receiver to ensure that the transmitter and the receiver know each other.  If the receiver knows the transmitter, the data is processed; if not, the data is rejected.  (Id. at ¶ 66.)

A well-known model referred to as the OSI Reference Model, which is included in the '682 Patent, breaks transmission networks into seven layers, each of which has a different functionality.  (Id.)  At layer one, data and messages are transmitted from the transmitter to the receiver using a physical protocol.  (Id.)  Each subsequent layer builds on the layer before it.  (Id.)  The final layer,

layer seven, is an application layer, and the '682 Patent optimizes the security of data transmission by preforming authentication at this layer. (Id.)

Claim 1 of the '682 Patent describes the alleged innovation as:

> A method for transmitting data from a transmitter to a receiver, comprising:
>
> providing transmitter-to-receiver authentication at a Real Time Transport Protocol (RTP) packet level as an application protocol on an application layer by inserting, at the transmitter, authentication data at end of a whole RTP packet payload;
>
> ascertaining, by the receiver, whether the receiver knows the transmitter based on the RTP packet level authentication data;
>
> and accepting, by the receiver, the whole RTP packet payload, if the receiver knows the transmitter, and otherwise rejecting the whole RTP packet payload.

(Id. at ¶ 70.) In sum, the purpose of the '682 Patent is to transmit data from a transmitter to a receiver, with the receiver ensuring that the data is not insecure or unwanted data. (Id. at ¶ 66.)

Plaintiffs submit that the new paragraphs inserted into the FAC (¶¶ 70–75) validate the '682 Patent by alleging that it was "neither known, conventional, nor generic to (1) provide authentication for the RTP packets at the higher application layer (as opposed to the transport layer or other lower levels of the protocol stack), (2) insert authentication data at the end of an RTP packet payload (as opposed to at other locations and in other types of data packets), or (3) the combination of these elements." (See Doc. No. 63 at 11–12; see, e.g., Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (finding inventive concept in "nonconventional and non-generic arrangement of elements).) In other words, it is the location, or in which layer the authentication happens, that Plaintiffs' claim validates the '682 Patent. For the reasons discussed below, the Court disagrees.

**Standard of Review**

Under Rule Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint need not contain "detailed factual allegations," but it must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 555, 570 (2007)). In assessing the plausibility of a claim, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002). A court's review is limited to the allegations in the complaint, exhibits attached to the complaint, and documents incorporated by reference. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); El-Hewie v. Bergen Cty., 348 F. App'x 790, 794 (3d Cir. 2009).

It is well-settled that courts may determine patent eligibility under 35 U.S.C. § 101 at the Rule 12(b)(6) stage. SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion") (quoting Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373–74 (Fed. Cir. 2016)); see also Voter Verified, Inc. v. Election Sys. & Software LLC, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility); Maxon, LLC v. Funai Corp., 726 F. App'x 797, 798 (Fed. Cir. 2018) (same). Determining eligibility at the pleadings stage is possible, however, "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018).

As noted, Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. See 35 U.S.C. § 101. The United States Supreme Court has recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. Alice Corp. Pty. v. CLS Bank Int'l, 573 U.S. 208, 216 (2014). These exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013) (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 77-78 (2012)); see also Alice, 573 U.S. at 216. A claim falling within any one of these exceptions is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." Berkheimer v. HP Inc., 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." Alice, 573 U.S. at 217; see also Mayo, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. Alice, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc., 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed to a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept," i.e., "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Alice, 573 U.S. at 217-18 (alteration in original) (quoting Mayo, 566 U.S. at 72–73). These two steps are discussed in more detail below.

At both steps of the Alice framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." TMI Sols. LLC v. Bath & Body Works Direct, Inc., No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018); see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1295 (Fed. Cir. 2016) ("[T]he decisional mechanism courts now apply [to Section 101 cases] is to examine earlier cases in which a similar or parallel descriptive nature can be seen.")

4

**Step One of the Alice Framework**

At step one of Alice, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015); see also Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016) [hereinafter "Affinity Labs I"] (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). "This 'directed to' inquiry does more than 'simply ask whether the claims involve a patent-ineligible concept'. . . Instead, we must look to the character of the claims as a whole to determine whether they are 'directed to' patent-ineligible subject matter." AI Visualize, Inc. v. Nuance Commc'ns, Inc., 97 F.4th 1371, 1378 (Fed. Cir. 2024) (citing Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016)). In addressing step one of Alice, a court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. Alice, 573 U.S. at 217; see also McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1050 (Fed. Cir. 2016).

**Step Two of the Alice Framework**

At step two of Alice, in searching for an inventive concept, a court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." Alice, 573 U.S. at 218; see also McRO, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" Berkheimer, 881 F.3d at 1367 (citation omitted); see also Mayo, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art . . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016). "A claim cannot rest on the patent-ineligible concept alone to transform the invention into something significantly more than that concept." AI Visualize, 97 F.4th at 1379 (citing BSG Tech LLC v. Buyseasons, Inc., 899 F.3d 1281, 1290 (Fed. Cir. 2018)). Fundamentally, step two "look[s] more precisely to what the claim elements add." Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016).

Furthermore, whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. Berkheimer, 881 F.3d at 1368. "Thus, at the motion to dismiss stage, 'patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).'" AI Visualize, 97 F.4th at 1379.

**The New Portions of the First Amended Complaint Do Not Render the '682 Patent Valid**

Under the Alice framework analysis, the new information is insufficient to revive the '682 Patent. As noted above, to assess whether a claim is patent-eligible, courts engage in a two-step analysis under Alice. At step one, the Court determines whether the claims are directed to a concept that is not eligible for a patent, such as an abstract idea. See Alice, 573 U.S. at 217. This Court found that the '682 Patent is directed to the abstract idea of "providing transmitter-to-receiver authentication," and accepting or rejecting the information. (Doc. No. 35 at 13.) In the Partial Motion, VideoLabs does not argue that the '682 Patent is not directed to the abstract idea; instead, it argues that the new paragraphs in the FAC support a different conclusion with regard to step two of Alice. (See Doc. No. 63 at 11.) The Court will therefore reaffirm its original conclusion regarding step one and move on to step two.

Regarding the second step of the Alice framework, the relevant question is whether Claim 1 in the '682 Patent contains additional elements that amount to something "significantly more" to transform the '682 Patent into a patent-eligible application of the abstract idea. See Alice, 573 U.S. at 217–18. Plaintiffs contend that the description of the '682 Patent in the FAC meets this standard by providing an inventive concept "because it encompasses an unconventional arrangement of elements." (Doc. No. 63 at 11.) Defendants make the stronger argument, however, that "the FAC's new allegations do not change the [35 U.S.C.] § 101 analysis" because the added portions are merely conclusions of Plaintiffs' expert witness Dr. Stuart G. Stubblebine that the '682 Patent's claim that moving the authentication data to the end of a packet payload is unconventional. (Doc. No. 56 at 12; see Doc. No. 45-5.) But this change in the location of the authentication data does not make the patent inventive.

To be an "inventive concept," the claim elements must "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." Berkheimer, 881 F.3d at 1367 (internal quotations omitted). An "inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." Bascom Glob. Internet Servs., 827 F.3d at 1350. But merely reciting "concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." In re TLI Comm'ns LLC Patent Litig., 823 F.3d 607, 613 (Fed. Cir. 2016). Moreover, in determining whether an inventive concept is present, courts have "repeatedly cited allegations in the complaint to conclude that the disputed claims were potentially inventive." See Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d 1306, 1317 (Fed. Cir. 2019) (concluding "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss).

Plaintiffs submit that the paragraphs inserted into the FAC (¶¶ 70–75) allege that providing authentication "at a Real Time Transport Protocol ("RTP") packet level as an application protocol on an application layer by inserting, at the transmitter, authentication data at end of a whole RTP packet payload," was unconventional because Dr. Stubblebine concluded that they were unconventional. (See Doc. No. 63 at 11–12.) Specifically, Plaintiffs argue that it was "neither known, conventional, nor generic to (1) provide authentication for the RTP packets at the higher application layer (as opposed to the transport layer or other lower levels of the protocol stack), (2) insert authentication data at the end of an RTP packet payload (as opposed to at other locations and in other types of data packets), or (3) the combination of these elements." (Id.; see, e.g.,

BY THE COURT:

/s/ Joel H. Slomsky, J.
JOEL H. SLOMSKY, J.

---

Bascom Glob. Internet Servs., Inc., 827 F.3d at 1350 (finding inventive concept in "nonconventional and non-generic arrangement of elements").) Plaintiffs assert that "to the extent it was contemplated to add authentication services to RTP, it was at the transport layer of the protocol or lower—not at the application layer." (Id. (citing FAC at ¶ 72; Doc. No. 45-5 ¶¶ 25–26; '682 Patent, 3:16–41.))

Defendants counter that the '682 Patent itself confirms that authentication, RTP, and application protocols were known. All of the components and their functionality were known on the basis of the OSI Reference Model and from previous publications, and the application layer's ordinary function includes authenticating data. (See id. at 10 (citing '682 Patent, 1:19-22); see also FAC at ¶ 62; Doc. No. 35 at 15.) Notably, the OSI Reference Model "disclosed transmitting data through the 'application layer using an application protocol.'" (Id. (citing '682 Patent, 1:19-45, 6:12-14; FAC at ¶ 67).) And Dr. Stubblebine's opinion alone that providing authentication for the RTP packets above the transport layer at the end of an RTP packet payload is novel does not make it novel. (See Doc. No. 45-5 ¶ 24; FAC at ¶ 72.)

Even when conceding that placing authentication data on the application layer is new, without a showing of any meaningful difference regarding the position of the authentication data, inventiveness is not established. The new placement of authentication data evokes the image of a traffic light: switching the positioning of "red," "yellow," and "green" would not alter the colors' purpose. In other words, if green were on top and red were on the bottom, the colors would function the same way, informing a driver whether to "stop," "slow down," or "go." The concept of green being on top would not be an inventive one. Here, Plaintiffs have simply not shown what inventive concept arises in providing authentication for the RTP packets at "the higher application layer" as opposed to another layer. (See Doc. No. 63 at 11–12.) Therefore, they have not shown that the '682 Patent contains an inventive concept that would validate it.

Thus, viewing the facts in the light most favorable to Plaintiffs, the added paragraphs in the FAC do not alter the Court's analysis of the Alice factors.

**Conclusion**

For the foregoing reasons, Defendant's Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. Nos. 55, 56) will be granted and Claim IV will be dismissed.